**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREA RENOJ-XILOCH,<br><br>                              Petitioner,<br><br>            v.<br><br>MARKWAYNE MULLIN, ET AL.,<br><br>                              Respondents. | Case No. 5:26-cv-03744-MBK<br><br>ORDER GRANTING PETITION AND ISSUING A WRIT OF HABEAS CORPUS |

Petitioner Andrea Renoj-Xiloch, a native and citizen of Guatemala, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Ms. Renoj-Xiloch entered the United States without inspection in 2007. During the two decades she has resided in the United States, Ms. Renoj-Xiloch has raised four United States citizen children and worked as a street vendor to support her family.

In November 2025, immigration officers arrested Ms. Renoj-Xiloch and later transported her to the Adelanto Detention Facility. After an Immigration Judge ("IJ") found that it lacked jurisdiction to conduct a bond hearing for Ms. Renoj-Xiloch, in January 2026, Ms. Renoj-Xiloch filed a

habeas petition in the Central District of California. *See Andrea Renoj Xiloch v. James Janecka, et al.*, No. 5:26-cv-00318-SSS-BFM. Based on the Government's concession that Ms. Renoj-Xiloch was entitled to a bond hearing, the court granted the petition and ordered that she be released unless she was afforded a bond hearing under 8 U.S.C. § 1226(a). *Id.*, Dkt. 14. At the ensuing bond hearing, the IJ denied Petitioner's release. Several weeks later, on May 12, 2026, the IJ again denied Petitioner's release at a bond hearing conducted pursuant to *Rodriguez v. Holder*, No. 2:07-cv-03239-TJH-RNB, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013).

Ms. Renoj-Xiloch filed the instant habeas petition on July 7, 2026. She argues that there is no justification for her ongoing detention and that the IJ erred in finding her a flight risk, in violation of due process and 8 U.S.C. § 1226(a). In their Answer, Respondents argue that this Court lacks jurisdiction to consider Ms. Renoj-Xiloch's challenge to the IJ's bond determination and that her claims should be dismissed for failure to exhaust administrative remedies, but do not defend the IJ's bond determination on the merits.

For the reasons that follow, the Court concludes it has jurisdiction to consider Ms. Renoj-Xiloch's claims and that a waiver of exhaustion is warranted. In light of Respondents' non-opposition to the merits of Ms. Renoj-Xiloch's claims, the Court concludes that the IJ abused its discretion by finding Ms. Renoj-Xiloch a flight. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Ms. Renoj-Xiloch's immediate release, subject to appropriate conditions of supervision.

## I.    FACTUAL AND PROCEDURAL HISTORY

Petitioner Andrea Renoj-Xiloch is a citizen and national of Guatemala. Dkt. 1 at 13. Petitioner entered the United States without inspection in 2007

and has resided in the United States since that time. *Id.* at 13-15. Petitioner has developed significant family and community ties over the nearly two decades she has lived in the United States. Petitioner has four children, all of whom are United States citizens. *Id.* at 13. Her eldest child is a senior in high school and plans to attend a university. *Id.* at 14. Petitioner has worked as a street vendor to support her family. *Id.* at 14. Petitioner has no criminal convictions or arrests during her time in the United States. *Id.*

In November 2025, Petitioner was encountered by immigration officers while they conducted an enforcement operation in Los Angeles County. *Id.* at 15. The officers arrested Petitioner and later transported her to Adelanto Detention Facility, where she has remained since that time. *Id.* at 13-15.

On December 9, 2025, Petitioner appeared for a bond hearing under 8 U.S.C. § 1226(a), but withdrew her request. Dkt. 8 at 7. Petitioner appeared again for a bond hearing on December 18, 2026, at which the Immigration Judge ("IJ") concluded it lacked jurisdiction. *Id.* at 10. The IJ's order acknowledged that Petitioner was a class member in *Bautista v. Noem*, 5:25-cv-01873-SSS-BFM (C.D. Cal.), in which the court had concluded that noncitizens like Petitioner were detained under Section 1226(a) and eligible for a bond hearing. *Id.* The IJ stated that: "Until and unless the Bautista court issues a class-wide declaratory judgment or injunction, the Bautista court's opinion and partial grant of summary judgment does not constitute a judgment." *Id.* The Petitioner appeared for another bond hearing on January 23, 2026, but the IJ again found it lacked jurisdiction to conduct a bond hearing based on the same reasoning as its prior order. *Id.* at 16.

On January 24, 2026, Petitioner filed a habeas petition under 28 U.S.C. § 2241 challenging the IJ's ruling that it lacked jurisdiction to conduct a bond hearing. *See Andrea Renoj Xiloch v. James Janecka, et al.*, No. 5:26-cv-00318-

SSS-BFM. On February 20, 2026, the District Judge Sunshine S. Sykes granted the petition based on the Government's concession that Petitioner was member of the *Maldonado Bautista* class and ordered that Government provide Petitioner with a Section 1226(a) bond hearing within seven days. *Id.*, Dkt. 14 at 2-3 ("Respondents concede that Petitioner appears to be a member of the Bond Eligible Class certified by this Court in *Maldonado Bautista* and that Petitioner's claims regarding entitlement to a bond hearing are subject to the *Maldonado Bautista* judgment.").[1]

Pursuant to the Judge Sykes order, on February 27, 2026, the IJ conducted a bond hearing under 8 U.S.C. § 1226(a). *Id.* at 13. The IJ denied Petitioner's release on bond, writing only that she was a "flight risk." *Id.*

Most recently, on May 12, 2026, Petitioner appeared a bond hearing pursuant to *Rodriguez v. Holder*, No. 2:07-cv-3239-TJH-RNB, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013). At the hearing, Petitioner claims she "submitted extensive documentary evidence addressing every traditional custody factor recognized under *Matter of Guerra*," and that the Government "did not present evidence demonstrating that Petitioner posed a danger to the community" or "identify any changed circumstances arising after Petitioner's decades of peaceful residence that would justify continued incarceration." Dkt. 1 at 17. The IJ nonetheless denied Petitioner release as a flight risk "following an extraordinarily brief proceeding." *Id.* Petitioner claims that the IJ so concluded "despite Petitioner's overwhelming unrebutted evidence demonstrating long-term residence, family stability, employment history, community support, and the complete absence of criminal conduct." *Id.* at 17-18. The IJ's written decision states, in a single line, that Petitioner was denied

---

[1] Petitioner filed a separate habeas petition, *Reno Xiloch v. McAleenan, et al.*, 2:26-cv-00736-FLA-AGR, but subsequently dismissed the case in light in the case pending before Judge Sykes.

release because: "Flight risk that no amount of bond can mitigate." Dkt. 8 at 19.

Petitioner filed the instant habeas petition on July 7, 2026. Dkt. 1. The Petition asserts that Petitioner's detention is unlawful because: (1) she was denied meaningful review of her detention in violation of due process; (2) her ongoing detention does not bear a reasonable relationship to a legitimate government purpose, in violation of due process; (3) Petitioner has been deprived of liberty interest without adequate justification; and (4) the IJ abused its discretion and violated Section 1226(a) by denying Petitioner release on bond. *Id*. at 25-39. Petitioner argues that she is entitled to release because the Government has had multiple opportunities to justify her detention but failed to do so. *Id*. at 39-42.

The Court issued General Order 26-05 and the briefing schedule on July 7, 2026. Dkt. 5. On July 14, 2026, Respondents filed their Answer to the Petition. Dkt. 8. In their Answer, Respondents argue that the petition should be dismissed for failure to exhaust and, in any event, this Court lacks jurisdiction to consider Petitioner's claims regarding the bond denial. Dkt. 8 at 2-4. Petitioner filed her reply on July 15, 2026. Dkt. 9. Both parties have consented to proceed before the Magistrate Judge. Dkt. 6.

## II.   DISCUSSION

Petitioner raises several due process claims challenging her ongoing detention, but the gravamen of her claims is that her detention is not justified and the IJ erred in finding her a flight risk at the May 12, 2026, *Rodriguez* bond hearing. The Court therefore begins by addressing Respondents' arguments that the federal courts lack jurisdiction to consider Petitioner's challenge to the IJ's bond decision and that, in any event, the Court should

decline to consider it because Petitioner failed to fully exhaust administrative remedies. The Court then addresses Petitioner's challenge to the IJ's determination on the merits.

### A. The Court Has Jurisdiction to Consider Petitioner's Habeas Claims

Respondents argue that this Court lacks jurisdiction over Petitioner's claim regarding the IJ's bond determination because, "[w]hile the Ninth Circuit would have habeas jurisdiction to consider any error of law including a due process violation, the IJ's discretionary bond decision is not reviewable in federal court under 8 U.S.C. § 1226(e)." Dkt. 8 at 4. Petitioner contends that the federal courts have "authority to determine whether the Immigration Judge employed the correct legal framework, considered the factors required by law, afforded constitutionally adequate procedures, and remained within the bounds of the authority delegated under § 1226(a)" and that "that § 1226(e) does not prevent federal review where the petitioner alleges that the Immigration Judge abused his discretion by failing to apply the governing legal standards and thereby violated due process." Dkt. 9 at 13.

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Section 1226(e) therefore precludes a noncitizen from "challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 285 (2018) (plurality) (cleaned up).

Nonetheless, the federal courts retain jurisdiction to consider constitutional claims or questions of law regarding bond determinations, including "mixed questions" involving the application of law to facts. The Ninth Circuit has found that the immigration courts' determination that a

noncitizen presents a danger by "clear and convincing" evidence is such a "mixed question" amenable to federal court review. *See Martinez v. Clark,* 124 F.4th 775, 783 (9th Cir. 2024). Although *Martinez* involved a dangerousness determination, the same rationale applies to detention decisions based on flight risk. As *Martinez* recognizes, an IJ applies the same nine-factor test set forth in *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006) "[t]o determine whether an alien is a danger to the community *or a risk of flight*." 24 F.4th at 783 (emphasis added). Although what constitutes dangerousness "is malleable and involves agency discretion, *Wilkinson* instructs that this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Id*. (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). *Martinez* establishes that federal courts should review an IJ's dangerousness determination under an abuse of discretion standard. *Id*. at 784 ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion.").

Respondents do not address *Martinez* in their Answer. Instead, Respondents cite two other decisions, neither of which support their jurisdictional argument. In one decision, the District Court expressly recognized that "courts may review an IJ's finding that an alien poses a flight risk for abuse of discretion" under *Martinez. Zaitsev v. Warden*, No. 2:26-cv-00454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026). Respondents also cite to *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022), in which the Ninth Circuit stated that an "IJ's discretionary bond determination was not reviewable in federal court" under Section 1226(e), relying on the court's now-vacated decision in *Martinez v. Clark*, 36 F.4th 1219 (9th Cir. 2022) (holding that "the determination of whether a particular noncitizen

7

poses a danger to the community is a discretionary determination, which a federal court may not review.").

However, as *Zaitsev* explains, the 2022 *Martinez* decision (and the portion of *Rodriguez Diaz* relying on it) are no longer good law:

> On review, the Supreme Court vacated the Ninth Circuit's decision, in light of *Wilkinson v. Garland*, 601 U.S. 209 (2024). *See Martinez v. Clark*, 144 S. Ct. 1339 (2024). In *Wilkinson*, the Supreme Court considered whether judges can review an IJ's determination that an alien's removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child. *See Wilkinson*, 601 U.S. at 213, 217; *see also* 8 U.S.C. § 1229b(b). In its analysis, the Court addressed the interplay between 8 U.S.C. § 1252(a)(2)(B)(i), which strips courts of jurisdiction to review judgments regarding the granting of discretionary relief in the form of cancellation of removal, and 8 U.S.C. § 1252(a)(2)(D), which restores judicial review of "constitutional claims or questions of law." *See id.* at 218-21. The Court explained that § 1252(a)(2)(B)(i) precludes judicial review of an IJ's "underlying factual determination[s]," *id.* at 222, but not the determination "whether those established facts satisfy the statutory eligibility standard" for cancellation of removal, *id.* at 225. The Court reasoned that § 1252(a)(2)(D) empowers courts to review "questions of law" and that "[m]ixed questions of law and fact, even when they are primarily factual, fall within the statutory definition of 'questions of law' in § 1252(a)(2)(D) and are therefore reviewable." *Id.* at 225.
>
> On remand in *Martinez v. Clark*, the Ninth Circuit concluded that, in light of Wilkinson, "the determination of whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" 124 F.4th 775, 779 (9th Cir. 2024). The court explained that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law." *Id.* at 781–82 (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). The court then determined that the BIA's determination of dangerousness, as assessed against the backdrop of nine factors that IJs consider under BIA precedent in assessing whether an alien presents a flight risk or a danger to the community, constitutes a mixed question of fact and law, rather than a discretionary determination. *See id.* at 783–84; *see also Guerra*, 24 I&N Dec. at 40 (setting out nine factors an IJ may consider). The court further determined that "questions [that] require a close review of agency-found facts," such as the determination whether an alien is "dangerous" for purposes of release on bond, are subject to review for abuse of discretion. *Martinez*, 124 F.4th at 784.

*Zaitsev*, 2026 WL 391429, at *9-10.

Apart from citing inapposite authority, Respondents provide no basis to conclude that Petitioner's claims are unreviewable under Section 1226(e).

Petitioner challenges whether the IJ applied the correct legal standard, which is a legal issue, and the IJ's determination that she is a flight risk, which *Martinez* establishes is a "mixed question" involving the application of law to fact. The Court therefore concludes it has jurisdiction to consider Petitioner's claims challenging the IJ's bond decision.

### B. Petitioner Has Shown That a Waiver of Exhaustion is Warranted

Respondents argue that the Court should decline to address Petitioner's claims because she has not fully exhausted administrative remedies by appealing the bond denial to the BIA. Dkt. 8 at 2-4.

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

9

Petitioner concedes that she has not fully exhausted administrative remedies, but argues that exhaustion should be excused because she raises "constitutional issues" concerning the "adequacy of the process afforded during the custody hearing itself and the continuing legality of Petitioner's detention," and that she is suffering irreparable harm "each additional day of confinement." Dkt. 1 at 10-11; Dkt. 9 at 3-4. Respondents argue "[t]hat Petitioner remains in custody following [her] bond hearing is not irreparable harm that excuses exhaustion." Dkt. 8 at 4.

The Court agrees that a noncitizen's confinement does not, on its own, justify a waiver of exhaustion, but finds that several factors favor waiving exhaustion in this case. First, as Petitioner argues, the disputed issues in this case would not benefit from BIA review. While the BIA has the authority to review whether the IJ erred by finding Petitioner a flight risk, Respondents here do not defend the IJ's determination on the merits and only argue that this Court lacks jurisdiction to review it. An "'administrative appellate record is not necessary to resolve'" to resolve this issue. *Miri v. Bondi*, No. 5:26-cv-00698-MEMF-MAR, 2026 WL 622302, at *10–11 (C.D. Cal. Mar. 5, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017)).

Second, Petitioner would suffer significant irreparable harm if forced to wait for the BIA to render a decision on her appeal. Petitioner has already been confined for over seven months in immigration detention, during which time she has been separated from her children. *See supra* Sec. I. Although it is difficult to predict with certainty, Petitioner would likely need to wait at least six months in detention for the BIA to issue a decision on her appeal. "In 2024, EOIR data showed an average processing time of 204 days for bond appeals." *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). The delays have likely increased since 2024. As the Department of Justice recently

reported, "between fiscal year 2015 and the end of fiscal year 2025, the Board's pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). During this time, the BIA has been unable to "keep up with incoming filings while tackling the backlog in any meaningful way." *Id.* While DOJ is implementing new reforms to "streamline" BIA review and reduce this backlog, these efforts will likely take time—particularly because DOJ recently reduced the BIA's membership from 28 to 15 members. *Id.*

Third, Respondents unlawfully delayed review of Petitioner's detention by denying her a bond hearing at the outset of her detention. Respondents conceded that Petitioner was a member of the Bond Eligible Class in *Maldonado Bautista v. Santacruz,* No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), but nonetheless refused to provide her with a bond hearing until she was forced to file a habeas petition and Judge Sykes ordered the Government to comply with the *Maldonado Bautista* final judgment. *See Andrea Renoj Xiloch v. James Janecka, et al.*, No. 5:26-cv-00318-SSS-BFM, Dkt. 14 (Feb. 20, 2026). In so doing, Respondents unjustifiably delayed Petitioner the relief to which she was entitled under Section 1226(a) and the *Maldonado Bautista* final judgment for nearly six months. Had Respondents instead timely provided Petitioner with a bond hearing at the outset of her detention, she very well could have obtained BIA review of any adverse decision prior to the date she filed her habeas petition in this case. Under these circumstances, the Court does not believe it appropriate to further delay its review of Petitioner's claims.

Accordingly, the Court waives the prudential exhaustion requirement.

11

**C. Petitioner's Detention is Unlawful**

Petitioner advances several due process claims that, at their core, allege that the IJ failed to apply the governing legal standards at her *Rodriguez* bond hearing and erred by finding Petitioner a flight risk. *See* Dkt. 1 at 26-27 (arguing that the IJ's conclusion that "Petitioner represented an unmitigable flight risk . . . cannot be reconciled with the evidentiary record presented during the hearing"); *id.* at 32 (arguing that Respondents "failed to make [the] showing" necessary to justify Petitioner's detention); *id.* at 34 (arguing that the IJ failed to conduct an individualized determination); *id.* at 38 (arguing that the IJ "effectively substitute[d] a presumption of detention for the individualized judgment required by statute").

Respondents argue that this Court lacks jurisdiction to consider these claims, (Dkt. 8 at 2-3), but otherwise do not defend the IJ's bond determination on the merits. Respondents' failure to dispute Petitioner's claims that the IJ erred is a concession. *See Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to

respond to the claims actually asserted, Respondents have conceded the claims").

In light of Respondents' non-opposition, the Court concludes that the IJ abused its discretion by denying Petitioner's release as a flight risk. Under the abuse of discretion standard, the reviewing court determines whether the IJ "'applied the correct legal standard'" and may not "'reweigh evidence.'" *Martinez*, 124 F.4th at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). An IJ "'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,'" *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir. 2011)), or "'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).

The IJ conducted Petitioner's bond hearing pursuant to *Rodriguez v. Holder*, No. 2:07-cv-03239-TJH-RNB (C.D. Cal. Aug. 6, 2013), under which DHS bears the burden to justify a noncitizen's detention by "clear and convincing" evidence. The Court therefore proceeds to determine whether the IJ abused its discretion by finding that Petitioner presents a flight risk by "clear and convincing" evidence. The "clear and convincing" standard requires the Government to present evidence to establish "an abiding conviction that the truth of [the] factual contentions at issue is highly probable." *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (en banc). This is a "a high burden and must be demonstrated in fact, not 'in theory.'" *Obregon v. Sessions*, No. 17-cv-01463-WHO, 2017 WL 1407889, at *7 (N.D. Cal. Apr. 20, 2017) (quoting *United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991)).

13

*See also Perez v. Wolf*, 445 F. Supp. 3d 275, 287 (N.D. Cal. 2020) (collecting cases applying the "high standard" of "clear and convincing" evidence).

Here, the IJ's written decision states Petitioner was denied release because: "Flight risk that no amount of bond can mitigate." Dkt. 8 at 19. The decision includes no facts or analysis supporting its determination. Petitioner claims—and Respondents do not dispute—that she "submitted extensive documentary evidence" demonstrating her "long-term residence, family stability, employment history, community support, and the complete absence of criminal conduct" during her decades in the Unites States. Dkt. 1 at 17-18. In contrast, the Government "did not present evidence demonstrating that Petitioner posed a danger to the community" or "identify any changed circumstances arising after Petitioner's decades of peaceful residence that would justify continued incarceration." *Id.* at 17. "[F]ollowing an extraordinarily brief proceeding," the IJ denied Petitioner's release as a flight risk without addressing the evidence that she had submitted. *Id.*

The Court concludes that the IJ abused its discretion in several respects. First, there is no indication that the IJ required the Government to justify Petitioner's detention by "clear and convincing" evidence. The IJ's decision does not state that it applied the "clear and convincing" standard and Petitioner's description of the hearing suggests that the IJ did not require the Government to present any facts or evidence to meet its burden. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (finding that the "clear and convincing" standard could not likely be met where "the government never argued that Singh was a flight risk or presented any evidence to that effect"); *Sales v. Johnson*, 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2017) (finding that an IJ erred by finding "clear and convincing" evidence of flight risk where "[a]t

14

neither bond hearing did the government argue that Petitioner was a flight risk, nor did the government present any evidence to that effect").

Second, the IJ did not address the substantial evidence indicating she is not a risk of flight. Petitioner has resided in the United States for nearly two decades, has four minor United States citizen children, supports her family financially through her work as a street vendor, and has no criminal arrests or convictions. Dkt. 1 at 13-15. The IJ's failure to address the evidence that Petitioner has stable, settled life in the United States was error. *See Singh v. Warden, Golden State Annex Detention Facility*, No. 1:26-cv-01973-DAD-CSK, 2026 WL 1328588, at *6 (E.D. Cal. May 13, 2026) ("many district courts have recently concluded that an immigration judge abuses their discretion when they deny release on bond without any explanation of their reasoning in doing so" and collecting cases); *Aslan v. Semaia*, et al., No. 5:26-CV-02347-MAR, 2026 WL 1722902, at *7 (C.D. Cal. June 11, 2026) ("courts in this circuit have found that an IJ abuses their discretion when they fail to explain why the factors addressed established flight risk or how those factors outweigh significant evidence showing a petitioner is fixed and stable in the community" and collecting cases).

In sum, given Petitioner's longtime residence in the United States, her children and other significant connections in the community, her incentive to appear for ongoing proceedings to determine if she will be granted immigration relief, and the availability of conditions of release to mitigate any

15

risk of flight, the IJ abused its discretion by finding Petitioner a flight risk by "clear and convincing" evidence.

**D. Remedy**

The Court now turns to the appropriate remedy for the IJ's erroneous bond determination.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [] or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases).

This Court has previously found "a new bond hearing is the appropriate remedy to afford the Immigration Court an opportunity to correct its errors and conduct a bond hearing that complies with governing law." *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03007-cv-MBK, 2026 WL 734587, at *9 (C.D. Cal. Feb. 20, 2026), *adopted*, No. 5:25-cv-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026). However, here, the Court believes it appropriate to order Petitioner's release. Respondents do not contest that the IJ erred in finding Petitioner a flight risk. Under these circumstances, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the

appropriate remedy." *Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026).

### III.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Andrea Renoj-Xiloch's (A# 240-500-051) immediate release on conditional parole, subject to appropriate conditions; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this order.

Dated: July 16, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE